STATE OF NORTH CAROLINA v. NEZAR ANTHONY YARBOROUGH

No. COA08-1185

(Filed 7 July 2009)

### 1. Kidnapping— confinement to commit murder—confinement inherent in robbery—irrelevant

The trial court did not err by not dismissing a kidnapping prosecution where defendant argued that the confinement was inherent in an attempted robbery, but defendant was charged with kidnapping for the purpose of facilitating murder and was not charged with or convicted of robbery.

### 2. Kidnapping— confinement—evidence sufficient

The evidence was sufficient to allow a reasonable jury to conclude that a kidnapping victim was confined to the living and eating area of his trailer, even if he did not comply with defendant's order to lie on the floor.

### 3. Kidnapping— for the purpose of murder—evidence not sufficient

There was no evidence that defendant kidnapped any of the victims for the purpose of committing murder, as alleged in the indictments, and those convictions were reversed. A defendant cannot kidnap a person for the purpose of facilitating a felony murder.

### 4. Burglary— breaking and entering in the nighttime—evidence sufficient

The trial court did not err by failing to dismiss a charge of first-degree burglary for insufficient evidence where the State presented sufficient direct and circumstantial evidence to allow a reasonable juror to find that the breaking and entering occurred during the nighttime. The motion to dismiss first-degree murder, on the basis of insufficient evidence of the underlying felony, was also correctly denied.

### 5. Criminal Law— defense of accident—shooting after abandonment of robbery

There was no error in not instructing the jury on the defense of accident in a case arising from a break-in, a struggle, and a shooting. The defense of accident is not available if the defendant was engaged in misconduct at the time of the killing; even assum-

ing that the shooting occurred after defendant had decided to abandon the intended robbery and attempted to leave, this would not constitute a break in the events giving rise to the shooting.

**6. Homicide— instructions—first-degree murder—lesser included offenses not supported by evidence**

The trial court did not err by denying defendant's request for an instruction on first-degree murder under a premeditation and deliberation theory and on all lesser included offenses supported by the evidence. The shooting occurred during the course of a first-degree burglary, regardless of whether defendant decided at some point that he wished to leave, and defendant did not articulate how the evidence would support any lesser included offense. There was no conflict in the evidence supporting felony murder and no evidence supporting lesser included offenses.

**7. Constitutional Law— effective assistance of counsel—concession of some offenses—credibility**

Defendant did not receive ineffective assistance of counsel in a prosecution for first-degree murder, first-degree burglary, and multiple counts of kidnapping where his attorney conceded guilt of burglary and kidnapping. It was a reasonable strategy to admit guilt of offenses which had overwhelming evidence in the hope of establishing greater credibility for the first-degree murder charge.

Appeal by Defendant from judgment entered 20 March 2008 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 24 March 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters and Assistant Attorney General William P. Hart, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for Defendant.*

BEASLEY, Judge.

Defendant (Nezar Anthony Yarborough) appeals from judgments entered on his convictions of first-degree murder, first-degree burglary, first-degree kidnapping, and three counts of second-degree kidnapping. We vacate in part and find no error in part.

Defendant was indicted in September 2006 on three counts of second-degree kidnapping, and one count each of first-degree kid-

napping, first-degree burglary, assault with a deadly weapon with intent to kill, and first-degree murder. He was tried before a Nash County, North Carolina, jury in March 2008. The State's evidence generally showed the following: In April 2006 Cannon Williams lived at 8863 Medlin Way, in Sharpsburg, North Carolina. During the evening of 17 April 2006 a friend of Williams, Eric Watson, stopped by Williams's home after work. About thirty to forty-five minutes later, Williams' cousin, Derek Smith, arrived with Dana Denton. The group watched a movie, Williams and Watson went out for beer, and the four continued visiting in Williams's living room.

Without warning, Defendant and Jerry O'Neal entered the trailer. Their faces were covered and Defendant carried a shotgun. Defendant ordered everyone to lie on the floor. Defendant went towards a counter separating the living and kitchen areas. Instead of following Defendant's order to lie down, Williams picked up a gun from the kitchen table; the gun appeared realistic, but actually was a BB gun that was incapable of discharging. Williams hit Defendant on the head with the BB gun and attempted to disarm Defendant. Williams and Defendant wrestled over control of Defendant's shotgun, and Smith joined the fight. Defendant fired several shots during his struggle with Williams to retain control of his shotgun. One of these shots struck Smith, killing him.

The State offered testimony from Watson, Williams, O'Neal, and Denton about the shooting. All the eyewitnesses testified that neither they nor Smith had any previous acquaintance with Defendant or O'Neal; that Defendant and O'Neal entered the trailer without permission and ordered those present to lie down; that Williams fought with Defendant for possession of Defendant's gun; and that during the struggle Defendant fired a shot that proved fatal to Derek Smith. The witnesses also agreed that the entire incident took only a few minutes, that O'Neal was unarmed, that Defendant fired several shots during the tussle with Williams, and that Defendant left very shortly after shooting Derek Smith. Law enforcement officers offered statements taken from these witnesses, which corroborated their trial testimony.

Defendant's trial testimony was mostly consistent with that of the State's witnesses. Defendant testified that he and O'Neal went to Williams's trailer with the intent to steal cocaine. Defendant carried a fully loaded shotgun. Upon entering the trailer, Defendant told everyone to lie on the ground and went to a kitchen drawer where he had

STATE v. YARBOROUGH

[198 N.C. App. 22 (2009)]

been told to look for cocaine. As he opened the drawer, Williams "jumped him" and the two fought over Defendant's shotgun. During the melee several shots were fired from Defendant's shotgun. One of these shots killed Smith. Defendant testified that he brought the gun to Williams's house to scare the victims, but did not intend to harm anyone. He testified that the gun discharged while he was trying to leave the trailer.

Further details of the witnesses' testimony will be discussed as pertinent to the issues raised on appeal.

Defendant first argues that the court erred by not dismissing the charge of first-degree kidnapping against Derek Smith, and the three charges of second-degree kidnapping against Eric Watson, Dana Denton, and Cannon Williams, on the grounds that the evidence as to each charge was insufficient as a matter of law.

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. The trial court must examine the evidence in the light most favorable to the State, granting the State every reasonable inference to be drawn from the evidence." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998) (citations omitted).

[1] Under N.C. Gen. Stat. § 14-39(a)(2) (2007), a defendant is guilty of kidnapping if he or she "shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person" for the purpose of "[f]acilitating the commission of any felony or facilitating flight of any person following the commission of a felony[.]" In the instant case, Defendant was charged with kidnapping Williams, Smith, Denton, and Watson, each "for the purpose of facilitating the commission of a felony, Murder."

Defendant next argues that, if he restrained or confined any of the victims, it was only to the degree inherent in his attempted robbery. Defendant cites several cases holding that, if the extent of confinement or restraint is no more than that which is inherent in the charged offense, such evidence is insufficient to support a charge of kidnapping. The State argues that, inasmuch as Defendant was not charged with or convicted of robbery, any relationship between the restraint of the victims in this case and a hypothetical robbery charge is irrelevant. We agree. This assignment of error is overruled.

[2] Defendant also argues that he cannot be convicted of kidnapping Williams, because Williams did not obey Defendant's order to lie on the ground. We disagree. Our Supreme Court has held that,

> "as used in N.C. Gen. Stat. § 14-39 the term 'confine' connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement."

*State v. Gainey*, 355 N.C. 73, 95, 558 S.E.2d 463, 478 (2002) (quoting *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978)). In the instant case, it is undisputed that two people entered Williams's trailer. O'Neal stood in the doorway, while Defendant brandished a loaded shotgun and ordered everyone to get down. This evidence is sufficient to allow a reasonable jury to conclude that Williams was "confined" to the living and eating area of his trailer, even if Williams did not comply with Defendant's order to lie on the ground. This assignment of error is overruled.

[3] Defendant further argues that the kidnapping charges should have been dismissed, on the grounds that there was a fatal variance between the indictments for kidnapping and the trial evidence. "[A] fatal variance between the indictment and proof is properly raised by a motion for judgment as of nonsuit or a motion to dismiss, since there is not sufficient evidence to support the charge laid in the indictment." *State v. Faircloth*, 297 N.C. 100, 107, 253 S.E.2d 890, 894 (1979) (citations omitted). Defendant was charged with kidnapping in indictments that charge Defendant with confining or restraining the victims without their consent "for the purpose of facilitating the commission of a felony, Murder." Defendant asserts that all of the evidence shows that any confinement or restraint of the named victims was solely to facilitate the commission of attempted robbery. On this basis, he contends that the kidnapping convictions should be vacated. We agree.

An indictment charging a defendant with kidnapping to facilitate commission of a felony need not specify which particular felony was facilitated by kidnapping the victims.

> An essential element of kidnapping under N.C.G.S. 14-39(a)(2) is that the confinement, restraint or removal be for the purpose of facilitating the commission of any felony or facilitating escape

following the commission of a felony. The requirements of N.C.G.S. 15A-924(a)(5) are met for purposes of alleging this element by the allegation in the indictment that the confinement, restraint, or removal was carried out for the purpose of facilitating "a felony" or escape following "a felony." The allegations in the indictment adequately notify the defendant that he is charged with the crime of kidnapping. It is not required that the indictment specify the felony referred to in N.C.G.S. 14-39(a)(2).

*State v. Freeman*, 314 N.C. 432, 435, 333 S.E.2d 743, 745 (1985).

However, "[w]hen an indictment alleges an intent to commit a particular felony, the state must prove the particular felonious intent alleged." *State v. White*, 307 N.C. 42, 48, 296 S.E.2d 267, 270 (1982) (citing *State v. Faircloth* 297 N.C. 388, 255 S.E.2d 366 (1979)) (other citation omitted).

In the instant case, Defendant was charged with kidnapping to facilitate the commission of murder. Under N.C. Gen. Stat. § 14-17 (2007), first-degree murder includes any murder "which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon[.]" Significantly:

[t]his statute does not require that the defendant intend the killing, only that he or she intend to commit the underlying felony. An unintentional killing occurring during the commission of a felony is a felony murder under G.S. 14-17. Otherwise stated, a conviction of felony murder requires no proof of intent other than the proof of intent necessary to secure conviction of the underlying felony.

*State v. Lea*, 126 N.C. App. 440, 449, 485 S.E.2d 874, 880 (1997) (citations omitted). This Court concluded in *Lea* that "a charge of 'attempted felony murder' is a logical impossibility in that it would require the defendant to intend what is by definition an unintentional result." *Id.* at 450, 485 S.E.2d at 880. In *State v. Coble*, 351 N.C. 448, 452, 527 S.E.2d 45, 48 (2000), our Supreme Court cited *Lea* with approval and concluded that:

[l]ikewise, a charge of attempted second-degree murder is a logical impossibility. Second-degree murder, like felony murder, does not have, as an element, specific intent to kill. Rather, where the

element of malice in second-degree murder is proved by intentional conduct, a defendant need only intend to commit the underlying act that results in death.

We apply the reasoning of *Lea* and *Coble* and conclude that a defendant cannot kidnap a person for the purpose of facilitating a felony murder. Accordingly, where the defendant is indicted under N.C. Gen. Stat. § 14-39(a)(2) and charged with kidnapping for the purpose of facilitating the commission of a murder, the State must prove the defendant's intent to commit a premeditated and deliberate murder.

"In order to convict a defendant of premeditated, first-degree murder, the State must prove: (1) an unlawful killing; (2) with malice; (3) with the specific intent to kill formed after some measure of premeditation and deliberation. *See* N.C.G.S. § 14-17 [(2007)]." *State v. Peterson*, 361 N.C. 587, 595, 652 S.E.2d 216, 223 (2007). "Moreover, '[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime.' " *State v. Garcell*, 363 N.C. 10, 69, —— S.E.2d ——, —— (2009) (quoting *State v. Watts*, 357 N.C. 366, 380, 584 S.E.2d 740, 750 (2003) (citations and quotation marks omitted)).

> Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.

*State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994) (citations omitted).

> Premeditation and deliberation are processes of the mind. In most cases, they are not subject to proof by direct evidence but must be proved, if at all, by circumstantial evidence. Among other circumstances from which premeditation and deliberation may be inferred are (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has

been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991) (citing *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986)).

In the instant case, it is undisputed that Defendant had never met Derek Smith, or any of the others who were at Williams's house, until the attempted robbery on 17 April 2006. Defendant had no particular ill-will towards Smith and made no threats or declarations against Smith, either before or after the shooting. Smith was killed by a single bullet fired during an affray in which Smith took part. Defendant left the trailer almost immediately, taking no actions to prolong Smith's suffering or inflict additional wounds. Furthermore, law enforcement officers corroborated Defendant's testimony that he was distraught and remorseful after the shooting, declaring it to have been unintentional. We conclude that the record is devoid of evidence that Defendant had the specific intent to kill Derek Smith; therefore, Defendant did not kidnap Smith in order to facilitate a premeditated and deliberate murder.

The State does not argue that there was evidence that Defendant restrained or confined the victims to facilitate the commission of murder. Instead, the State contends that the naming of a specific felony in the kidnapping indictment was mere surplusage and can be disregarded. In support of its position, the State cites *State v. Freeman*. *Freeman* is easily distinguished and we conclude that it does not control the outcome of the instant case.

The defendant in *Freeman* was indicted for kidnapping the victim to facilitate the felonies of "rape or robbery." Defendant argued the indictment improperly alleged two offenses disjunctively. Our Supreme Court held that in "passing upon [the] validity" of a kidnapping indictment under N.C. Gen. Stat. § 14-39(a)(2), the specific felony or felonies need not be identified and were "mere harmless surplusage." *Freeman*, 314 N.C. at 436, 333 S.E.2d at 745-46. However, *Freeman* did not present the issue of a fatal variance between the indictment and the proof, as there was evidence of the defendant's commission of both rape and robbery. Consequently, the *Freeman* court did not discuss the issue raised in the instant case, and did not overrule the line of cases holding that, having alleged a specific felony, the State is then obliged to prove that the defendant's intent to commit that particular offense. *See, e.g., State v. White*, 307 N.C. 42,

296 S.E.2d 267; *State v. Faircloth,* 297 N.C. 100, 253 S.E.2d 890; and *State v. Morris,* 147 N.C. App. 247, 555 S.E.2d 353 (2001).

We conclude that there was no evidence that Defendant kidnaped any of the victims for the purpose of committing murder, as alleged in the indictments. We reverse Defendant's convictions of second degree kidnapping of Eric Watson, Cannon Williams, and Dana Denton, and his conviction of first-degree kidnapping of Derek Smith.

**[4]** Defendant next argues that the trial court erred by failing to dismiss the charge of first-degree burglary for insufficient evidence. We disagree.

> When a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine "whether there is substantial evidence of each essential element of the offense charged[.] . . . 'Substantial evidence' is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. . . . The reviewing court considers all evidence in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. Evidentiary "contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." Finally, sufficiency review "is the same whether the evidence is circumstantial or direct, or both."

*State v. Garcia,* 358 N.C. 382, 412-13, 597 S.E.2d 724, 746 (2004) (quoting *State v. Crawford,* 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996); *State v. Gibson,* 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995); and *State v. Jones,* 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981)) (other citations omitted).

"The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein. N.C.G.S. § 14-51 [(2007)]." *State v. Singletary,* 344 N.C. 95, 101, 472 S.E.2d 895, 899 (1996) (citations omitted). Defendant challenges the sufficiency of the evidence that the breaking and entering occurred at night.

"There is no statutory definition of 'nighttime' for the offense of burglary in North Carolina. North Carolina courts adhere to the com-

mon law definition of 'nighttime.' . . . [T]his Court has described 'nighttime' as that period of time after sunset and before sunrise 'when it is so dark that a man's face cannot be identified except by artificial light or moonlight.' " *State v. Ledford*, 315 N.C. 599, 607, 340 S.E.2d 309, 315 (1986) (quoting *State v. Lyszaj*, 314 N.C. 256, 266, 333 S.E.2d 288, 295 (1985)) (other citations omitted). Moreover, "the State is not limited to proving solely by direct evidence that the breaking and entering was accomplished in the nighttime; this essential element may be shown by proof of circumstances which convince a reasonable mind of the fact." *Ledford*, 315 N.C. at 607-08, 340 S.E.2d at 315 (citation omitted).

We conclude that the State presented sufficient direct and circumstantial evidence to allow a reasonable juror to find that the breaking and entering occurred during the nighttime. This evidence includes testimony that Watson visited with Williams after work, arriving around 6:00 p.m., and that Denton and Smith did not arrive until about thirty to forty-five minutes after Watson. Other witnesses testified that Denton and Smith arrived at around 7:00 p.m. or 7:30 p.m.; that the four then watched a movie; that following the movie Williams and Watson went out for beer and snacks; that it was after 8:00 p.m. when they returned, and; that the burglary did not occur until after they returned from buying snacks for the group. This is sufficient circumstantial evidence to support a finding that the break-in was during the nighttime.

Additionally, the State offered direct testimony that the incident occurred at night. Kimberly Smith, the Defendant's former girlfriend, testified that on 17 April 2006 she had a job interview in Gold Rock, North Carolina. After the interview, she and the Defendant went to the house where Defendant stayed, and watched television. That evening Defendant received a phone call from Robert Lewis, an acquaintance. Lewis told Defendant that Cannon Williams was in possession of a quantity of cocaine which would be easy for Defendant to steal. When Defendant and Smith left home, they went first to O'Neal's house. O'Neal agreed to participate in the robbery, and the three of them then went to Lewis's trailer. From there, O'Neal and Defendant walked to Williams's trailer, where the attempted robbery took place. Significantly, Smith testified several times that they did not leave for O'Neal's house until after dark:

PROSECUTOR: All right. Where did you go when you went to Sharpsburg?

STATE v. YARBOROUGH

[198 N.C. App. 22 (2009)]

SMITH: Went to his friends, Daniel and Damien's house.

. . . .

PROSECUTOR:  And how long were you there?

SMITH:  <u>Up until dark</u>, till we left.

. . . .

PROSECUTOR:  Okay. How long did you stay?

SMITH:  <u>Up until dark.</u>

PROSECUTOR: Sorry?

SMITH:  <u>Up until dark.</u>

PROSECUTOR:  Up until dark. And did there come a time when you and Mr. Yarborough left?

SMITH:  It was.

PROSECUTOR:  Okay. Approximately what time?

SMITH:  <u>About 8:00</u>, maybe.

. . . .

PROSECUTOR:  Where did you go?

SMITH:  He wanted me to go get his friend A.J. to help him with his robbery.

(emphasis added). This testimony alone is sufficient to allow the jury to find that the burglary occurred at night. This assignment of error is overruled.

In a related argument, Defendant contends that the trial court erred by failing to dismiss the charge of first-degree murder, on the grounds that there was insufficient evidence to submit the charge to the jury. Defendant argues that there was insufficient evidence of a breaking or entering at night, and thus that there was insufficient evidence of the underlying felony. On this basis he contends the charge of first-degree murder should have been dismissed. However, as we conclude that there was sufficient evidence that the break-in occurred at night, we necessarily reject this argument. This assignment of error is overruled.

**[5]** Defendant next argues that the trial court committed plain error by failing to instruct the jury on the defense of accident. Defendant correctly states the general rule that "[i]t is the duty of the trial court to instruct the jury on the law applicable to the substantive features of the case arising on the evidence[.]" *State v. Robbins*, 309 N.C. 771, 776, 309 S.E.2d 188, 191 (1983). Defendant asserts that, on the facts of this case, he was entitled to an instruction of the defense of accident. We disagree.

Defendant concedes that he failed to request an instruction on the defense of accident, or to object to the trial court's failure to instruct the jury on accident. "Because defendant failed to object to the instructions at trial, we consider only whether the trial court committed plain error. *See* N.C. R. App. P. 10(c)(4)." *State v. Smith*, 362 N.C. 583, 596, 669 S.E.2d 299, 308 (2008). The *Smith* court also noted that:

> "[a] reversal for plain error is only appropriate in the most exceptional cases." Plain error analysis should be applied cautiously and only when "after reviewing the entire record, it can be said the claimed error is . a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " An appellate court "must be convinced that absent the error the jury probably would have reached a different verdict."

*Id.* (quoting *State v. Duke*, 360 N.C. 110, 138, 623 S.E.2d 11, 29 (2005); *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983); *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)); and *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (other citations omitted). "Before applying plain error analysis to jury instructions, 'it is necessary to determine whether the instruction complained of constitutes error.' " *State v. Dean*, 196 N.C. App. ——, ——, 674 S.E.2d 453, 463 (2009) (quoting *State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007)).

" 'Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer.' " *State v. Phillips*, 264 N.C. 508, 512, 142 S.E.2d 337, 340 (1965) (quoting *State v. Faust*, 254 N.C. 101, 112, 118 S.E.2d 769, 776 (1961)). "The defense of accident 'is triggered in factual situations where a defendant, without premeditation, intent, or culpable negligence, commits acts which bring about the death of another. . . . It is not an affirmative defense, but acts to

negate the *mens rea* element of homicide.' " *State v. Turner*, 330 N.C. 249, 262, 410 S.E.2d 847, 854 (1991) (quoting *State v. Lytton*, 319 N.C. 422, 425-26, 355 S.E.2d 485, 487 (1987)).

However, the defense of accident is unavailable if the defendant was engaged in misconduct at the time of the killing. "The law is clear that 'evidence does not raise the defense of accident where the defendant was not engaged in lawful conduct when the killing occurred.' " *State v. Gattis*, 166 N.C. App. 1, 11, 601 S.E.2d 205, 211 (2004) (quoting *State v. Riddick*, 340 N.C. 338, 342, 457 S.E.2d 728, 731 (1995)). "Any defense based on the suggestion that the death was the result of an accident or misadventure must be predicated upon the absence of an unlawful purpose on the part of the defendant." *State v. York*, 347 N.C. 79, 96, 489 S.E.2d 380, 390 (1997) (citations omitted).

In the instant case, it is undisputed that Defendant broke into Williams's home with the intent of robbing him, and that the killing occurred within a few minutes of the entry, during a struggle over Defendant's shotgun. Defendant was engaged in misconduct at the time of the shooting, and may not avail himself of the defense of accident. Moreover:

> the jury specifically found that the underlying felony of [first degree burglary] was committed, which supports defendant's conviction of murder in the first degree on the basis of felony murder. It is well established that "[t]he killing of another human being, whether intentional or otherwise, while the person who kills is engaged in the perpetration of a felony, which felony is inherently or foreseeably dangerous to human life, is murder[.]" . . . [Burglary] is such a felony.

*State v. Woods*, 316 N.C. 344, 348-49, 341 S.E.2d 545, 547-48 (1986) (quoting *State v. Shrader*, 290 N.C. 253, 261, 225 S.E.2d 522, 528 (1976)) (other citations omitted).

Defendant acknowledges that he broke into Williams's trailer intending to steal drugs and immediately went to the drawer where he believed he would find the drugs. Before Defendant could open the drawer, Williams hit him and tried to disarm him. Defendant concedes that he did not leave the trailer at that point, but instead struggled with Williams for control of Defendant's shotgun. He further admits that the shot that killed Smith was fired during this struggle. Defendant asserts, however, that after he and Williams started fight-

ing, Defendant decided to "abandon" his plan to commit robbery and decided he wanted to leave. Defendant asserts that when he "abandoned" his plan to rob Williams, his right to the defense of accident was thereby "restored." Defendant contends that "there was a break in the sequence and chain of causation" and that because the shooting occurred while Defendant was trying to escape the trailer, it may legally be deemed an accident. We disagree.

Defendant claims that his right to the defense of accident was restored as soon as he decided to leave the trailer and informed Williams of his change of plan. Defendant essentially contends that, because the shooting occurred after he abandoned the plan to pursue the underlying felony of burglary, he is therefore entitled to rely on a defense of accident. In support of this position, Defendant cites several cases addressing the right to self defense. None of these cases hold that the defense of accident is available to a defendant under these circumstances. Indeed:

> [t]he felony murder rule was promulgated to deter even accidental killings from occurring during the commission of or attempted commission of a dangerous felony. The rationale of the felony murder rule is "that one who commits a felony is a bad person with a bad state of mind, and he has caused a bad result, so that we should not worry too much about the fact that the fatal result he accomplished was quite different and a good deal worse than the bad result he intended."

*State v. Richardson*, 341 N.C. 658, 666-67, 462 S.E.2d 492, 498 (1995) (quoting *State v. Wall*, 304 N.C. 609, 626, 286 S.E.2d 68, 78 (1982) (Copeland, J., dissenting)).

In addition, Defendant fails to cite authority supporting his position that the facts he has alleged would constitute a legally significant "break in the sequence of events." Defendant asserts that the shooting took place while he was trying to leave the trailer, after Defendant no longer wanted to rob Williams. However, a killing committed while a defendant is trying to flee the scene of a felony is a felony murder.

> "A killing is committed in the perpetration or attempted perpetration of a felony within the purview of a felony-murder statute when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous

transaction." . . . [E]scape is ordinarily within the *res gestae* of the felony and that a killing committed during escape or flight is ordinarily within the felony murder rule.

*State v. Squire*, 292 N.C. 494, 511-12, 234 S.E.2d 563, 573 (1977) (quoting *State v. Thompson*, 280 N.C. 202, 212, 185 S.E.2d 666, 673 (1972), *superseded by statute as stated in State v. Davis*, 305 N.C. 400, 290 S.E.2d 574 (1982)) (other internal quotations omitted). In the instant case, it is undisputed that Smith was shot within a few minutes of the break in. We conclude that, even assuming, *arguendo*, that the killing occurred after Defendant had decided to abandon the intended robbery and attempted to leave, this would not constitute a "break" in the events giving rise to the shooting.

We conclude that Defendant was not entitled to an instruction on the defense of accident, and that the trial court did not err by failing to give this instruction. Accordingly, we need not reach the issue of plain error. This assignment of error is overruled.

---

**[6]** Defendant argues next that the trial court erred in denying his request for an instruction on first-degree murder under the theory of premeditation and deliberation, and on all lesser included offenses that were supported by the evidence. We disagree.

Defendant correctly cites the general rule that

> when the state proceeds on a first-degree murder theory of felony murder only, the trial court must instruct on all lesser-included offenses "[i]f the evidence of the underlying felony supporting felony murder is in conflict and the evidence would support a lesser-included offense of first-degree murder." Conversely, when the state proceeds on a theory of felony murder only, the trial court should not instruct on lesser-included offenses "[i]f the evidence as to the underlying felony supporting felony murder is not in conflict and all the evidence supports felony murder."

*State v. Gwynn*, 362 N.C. 334, 336, 661 S.E.2d 706, 707 (2008) (quoting *State v. Millsaps*, 356 N.C. 556, 565, 572 S.E.2d 767, 773, 774 (2002)) (citation omitted).

Defendant reiterates a summary of the evidence, and draws our attention to evidence suggesting that he shot Derek Smith while attempting to leave the trailer. However, the undisputed evidence, from both the State and the Defendant, showed that Defendant broke into Williams's house to commit a robbery, and that: (1) Defendant

and Williams started fighting almost as soon as Defendant entered the trailer; (2) Smith was shot shortly after they started scuffling, and; (3) the entire incident was over in a few minutes. On these facts we conclude that the shooting occurred during the course of Defendant's commission of first-degree burglary, regardless of whether, at some point during the few minutes he was in Williams's home, Defendant decided he wished to leave. As discussed above, we reject Defendant's argument that, if he had "abandoned" his plan to rob Williams when he shot Smith, this might legally excuse what would otherwise be a felony murder.

Defendant also contends that there was "no substantial evidence" that the break-in occurred during the nighttime. We have previously rejected this argument.

Furthermore, Defendant does not articulate that this evidence would support any lesser included offense, does not assert that any particular lesser included offense is supported by the evidence, and does not explain which evidence would support an instruction on which lesser included offense.

We conclude that there was no conflict in the evidence supporting felony murder. The evidence is uncontradicted that Defendant took a fully loaded shotgun to Williams's house, broke into Williams's house without permission, and that he planned to steal drugs and/or money from Williams. We also conclude that there was no evidence supporting the submission of any lesser included offenses. This assignment of error is overruled.

---

[7] Finally, Defendant argues that he received ineffective assistance of counsel, because his attorney conceded his guilt of burglary and kidnapping. We disagree.

> The components necessary to show ineffective assistance of counsel are (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Garcell*, 363 N.C. at 51, —— S.E.2d at —— (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, —— (1984); and citing *State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985)).

"The question becomes whether a reasonable probability exists that, absent counsel's deficient performance, the result of the proceeding would have been different." When a court undertakes to engage in such an analysis, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

*State v. Mason*, 337 N.C. 165, 177-78, 446 S.E.2d 58, 65 (1994) (quoting *State v. Moorman*, 320 N.C. 387, 399, 358 S.E.2d 502, 510 (1987); and *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694).

In the instant case, the evidence was overwhelming that Defendant had committed first-degree burglary. The evidence supporting the kidnapping charge, including Defendant ordering the victims to lie down, was likewise undisputed. The legal argument for setting aside the kidnapping convictions was not based on any conflict in this evidence, but on a legal variance between indictment and evidence. Defense counsel apparently decided that, if Defendant admitted his guilt of burglary and kidnapping, it might improve his credibility before the jury regarding the actual shooting. It was a reasonable strategy to admit guilt of these offenses for which the evidence was overwhelming, in hopes of establishing greater credibility with the jury regarding the charge of first-degree murder. This assignment of error is overruled.

For the reasons discussed above, we conclude that Defendant's convictions of kidnapping must be reversed, and that there was no reversible error in his convictions of first-degree burglary and first-degree murder.

Reversed in part, no error in part.

Judges McGEE and GEER concur.