#27951-r-DG
**2018 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                         Plaintiff and Appellee,

    v.

HI TA LAR,                                     Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

CAROLINE A. SRSTKA
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff and
                                              appellee.


DAVID K. WHEELER
Huron, South Dakota                           Attorney for defendant and
                                              appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
OPINION FILED **02/21/18**

GILBERTSON, Chief Justice

[¶1.]        Hi Ta Lar appeals his conviction and sentence for unauthorized ingestion of a controlled substance (methamphetamine).  Law enforcement required Lar to produce a urine sample without first obtaining his consent or a warrant.  Lar argues the circuit court erred by denying his motion to suppress evidence produced through chemical analysis of the sample.  We reverse and remand.

**Facts and Procedural History**

[¶2.]        On January 26, 2015, at approximately 10:55 p.m., Lar was a passenger in the rear seat of a vehicle that was stopped for an inoperable headlight.  Due to the driver's nervous appearance, law enforcement deployed a drug dog, which indicated a controlled substance was present in the vehicle.  Law enforcement searched the vehicle and discovered a metal pipe and 0.498 ounce of marijuana in a seat pocket behind the front passenger seat.  No controlled substances were found on Lar.  Lar, the driver of the vehicle, and two other passengers were subsequently arrested for possession of two ounces or less of marijuana and for possession of drug paraphernalia.

[¶3.]        Following the arrest, law enforcement required Lar to provide a urine sample.  An officer watched Lar urinate into a specimen cup.  Law enforcement did not obtain a warrant or Lar's consent prior to doing so.  Subsequent testing by the State Health Lab detected metabolites of methamphetamine in Lar's urine.  Lar filed a motion to suppress the results of the urinalysis, but the circuit court denied the motion.  In total, Lar faced one count of possessing two ounces or less of marijuana in violation of SDCL 22-42-6, one count of unauthorized ingestion of a

controlled substance in violation of SDCL 22-42-5.1, and one count of possessing

drug paraphernalia in violation of SDCL 22-42A-3.

[¶4.] Lar agreed to waive his right to a jury trial on the ingestion charge in

exchange for the State dismissing the possession charges. A court trial was held on

June 14, 2016. The court found Lar guilty of unauthorized ingestion of a controlled

substance. On August 9, the court sentenced Lar to imprisonment for three years.[1]

[¶5.] Lar appeals, raising one issue: Whether law enforcement may, without

a warrant, require an arrestee to provide a urine sample as a search incident to

arrest.

### Standard of Review

[¶6.] "Constitutional interpretation is a question of law reviewable de novo."

*Kraft v. Meade Cty. ex rel. Bd. of Cty. Comm'rs*, 2006 S.D. 113, ¶ 2, 726 N.W.2d 237,

239 (quoting *Steinkruger v. Miller*, 2000 S.D. 83, ¶ 8, 612 N.W.2d 591, 595). "[W]e

review the circuit court's factual findings for clear error but 'give no deference to the

circuit court's conclusions of law.'" *State v. Medicine*, 2015 S.D. 45, ¶ 5, 865 N.W.2d

492, 495 (quoting *State v. Walter*, 2015 S.D. 37, ¶ 6, 864 N.W.2d 779, 782).

### Analysis and Decision

[¶7.] The U.S. Constitution protects "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures[.]" U.S. Const. amend. IV; *see also* S.D. Const. art. VI, § 11. "As the text

---

1. Lar's offense is a Class 5 felony, which carries a presumptive sentence of probation. SDCL 22-6-11. In sentencing Lar to imprisonment, the circuit court determined that aggravating factors warranted deviating from the presumptive sentence. Lar does not appeal this determination.

makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Riley v. California*, ___ U.S. ___, ___, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006)). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment . . . ." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)). Thus, "[i]n the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2482.

[¶8.]        This case "concern[s] the reasonableness of a warrantless search incident to a lawful arrest." *Id.* "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 471, 38 L. Ed. 2d 427 (1973).

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Chimel v. California*, 395 U.S. 752, 762-63, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969). This "authority to search the person incident to a lawful custodial arrest" is categorical—i.e., it "does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact

be found upon the person of the suspect." *Robinson*, 414 U.S. at 235, 94 S. Ct. at 477.

[¶9.]     While "the existence of the exception for . . . searches [incident to arrest] has been recognized for a century, its scope has been debated for nearly as long. That debate has focused on the extent to which officers may search property found on or near the arrestee." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2482-83 (citation omitted). For example, the authority to search incident to arrest extends to "the area into which an arrestee might reach in order to grab a weapon or evidentiary items[.]" *Chimel*, 395 U.S. at 762-63, 89 S. Ct. at 2040. But the exception does not justify searching an "entire three-bedroom house, including the attic, the garage, and a small workshop" just because the arrest occurred inside the home. *Id.* at 754, 768, 89 S. Ct. at 2035, 2043. Nor does the exception extend to searching an arrestee's vehicle unless "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719. The exception does not extend to "search[ing] digital information on a cell phone seized from an individual who has been arrested." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2480, 2495. And while the exception does extend to obtaining an arrestee's breath without a warrant, it does not extend to obtaining an arrestee's blood without a warrant. *Birchfield v. North Dakota*, ___ U.S. ___, ___, 136 S. Ct. 2160, 2185, 195 L. Ed. 2d 560 (2016).

[¶10.]     The question in this case, then, is not whether searching Lar's urine was likely to produce weapons or evidence; rather, the question is "whether application of the search incident to arrest doctrine to this particular category of

effects would 'untether the rule from the justifications underlying the *Chimel* exception'"—i.e., "harm to officers and destruction of evidence[.]" *Riley*, ___ U.S. at ___, 134 S. Ct. at 2484-85 (quoting *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719). The United States Supreme Court has never extended the search-incident-to-arrest exception to the collection and testing of an arrestee's urine. Nor does "the founding era . . . provide any definitive guidance as to whether [such tests] should be allowed incident to arrest." *See Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2176 (discussing "[b]lood and breath tests to measure blood alcohol concentration").

> Absent more precise guidance from the founding era, [the question] whether to exempt a given type of search from the warrant requirement [is determined] "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."

*Riley*, ___ U.S. at ___, 134 S. Ct. at 2484 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300, 143 L. Ed. 2d 408 (1999)).

[¶11.] The State does not argue that searching an arrestee's urine is justified by *Chimel's* officer-safety rationale. Like digital data on a cell phone, information in an arrestee's urine "cannot itself be used as a weapon to harm an arresting officer or to effectuate the arrestee's escape." *Cf. id.* at ___, 134 S. Ct. at 2485. "[T]he officers who searched [Lar's urine] 'knew exactly what they would find therein: data. They also knew that the data could not harm them.'" *Cf. id.* (quoting *United States v. Wurie*, 728 F.3d 1, 10 (1st Cir. 2013)). Thus, application of the search-incident-to-arrest exception to the category of effects at issue here—i.e., an arrestee's urine—would untether the rule from *Chimel's* officer-safety justification. "To the extent dangers to arresting officers may be implicated in a particular way in

a particular case, they are better addressed through consideration of case-specific exceptions to the warrant requirement, such as the one for exigent circumstances." *Id.* at ___, 134 S. Ct. at 2486.

[¶12.] As for *Chimel's* second justification, it is undisputed that an arrestee's urine, like other biological samples, can contain evidence of crime.[2] But Lar argues that the government's interest in preserving such evidence does "not justify extending a search incident to arrest to collection and testing of an arrestee's urine"

---

2. In this case, police searched Lar's urine for metabolites of methamphetamine, which is evidence of a crime (i.e., possessing a controlled substance) other than the crime of arrest (i.e., possessing marijuana and paraphernalia). Regardless, the United States Supreme Court has indicated that the object of a search incident to arrest does not necessarily need to be evidence of the particular crime of arrest.

In *Robinson*, police arrested a motorist for driving with a revoked license. 414 U.S. at 220-21, 94 S. Ct. at 470. During a search of the motorist incident to arrest, police discovered a cigarette box containing heroin. *Id.* at 223, 94 S. Ct. at 471. The motorist was convicted of possessing heroin, but the United States Court of Appeals for the District of Columbia reversed. *Id.* at 220, 94 S. Ct. at 469. The Court of Appeals reasoned that because a search of the arrestee could produce only evidence of crimes other than the crime of arrest (i.e., driving with a revoked license), *Chimel's* evidence-preservation justification did not apply. *Robinson*, 414 U.S. at 227, 94 S. Ct. at 473. The United States Supreme Court reversed and held that the authority to search incident to arrest is not diminished "by the absence of probable fruits or further evidence of the particular crime for which the arrest is made." *Id.* at 234, 94 S. Ct. at 476.

Similarly, in *Riley*, police arrested a motorist for possessing concealed and loaded firearms in his vehicle. ___ U.S. at ___, 134 S. Ct. at 2480. During a search incident to arrest, police seized a smart phone and searched its digital data, which implicated the arrestee in several additional crimes. *Id.* at ___, 134 S. Ct. at 2481. The arrestee was convicted for the additional crimes and appealed to the California Supreme Court, which affirmed. The United States Supreme Court reversed, not because a search of the smart phone could have produced only evidence of crimes other than the crime of arrest, but rather because privacy concerns outweighed the government's interest in preserving evidence. *Riley*, ___ U.S. at ___, 134 S. Ct. at 2486-93.

because "the arrestee has no ability to alter the chemical composition of the urine or otherwise destroy it." While an arrestee may not be able to take active steps to destroy evidence in his urine, the "concern for preserving evidence or preventing its loss readily encompasses the inevitable metabolization of" that evidence. *See Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2182 (discussing metabolization of alcohol in arrestee's blood). This is because

> [t]he distinction . . . between an arrestee's active destruction of evidence and the loss of evidence due to a natural process makes little sense. In both situations the State is justifiably concerned that evidence may be lost, and [the defendant] does not explain why the cause of the loss should be dispositive.

*Id.* Likewise, Lar does not explain how the State's interest in preserving evidence is diminished when the loss of evidence results from a natural process like metabolization.

[¶13.] Even so, "[t]he search incident to arrest exception rests not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2488. "The fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely. . . . To the contrary, when 'privacy-related concerns are weighty enough[,]' a 'search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee.'" *Id.* (quoting *Maryland v. King*, 569 U.S. 435, 463, 133 S. Ct. 1958, 1979, 186 L. Ed. 2d 1 (2013)). In weighing the privacy-related concerns of extending the search-incident-to-arrest exception to a particular category of effects, relevant considerations include the degree of "physical intrusion" of the search, the amount of information potentially revealed by the search, and the

potential "to cause any great enhancement in the embarrassment that is inherent in any arrest." *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2176-77, 2184.

[¶14.] The privacy concerns surrounding the category of effects at issue in this case (i.e., an arrestee's urine) outweigh the State's interest in preserving evidence. Although requiring an arrestee to urinate into a specimen container does not involve a physical intrusion into the body,[3] such a search is both more informative and more embarrassing than the breath test approved in *Birchfield*. While "breath tests are capable of revealing only one bit of information, the amount of alcohol in the subject's breath[,]" *id.* at ___, 136 S. Ct. at 2177, the "chemical analysis of urine, like that of blood, can reveal a host of private medical facts about [a person], including whether he or she is epileptic, pregnant, or diabetic[,]" *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413, 103 L. Ed. 2d 639 (1989). And "[e]ven if the law enforcement agency is precluded from testing the [urine] for any purpose other than to [detect evidence of crime], the potential remains and may result in anxiety for the person tested." *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2178.

[¶15.] Requiring an arrestee to urinate into a specimen container also has the potential to be "a substantial invasion beyond the arrest itself[.]" *Riley*, ___ U.S. at ___, 134 S. Ct. at 2488.

> There are few activities in our society more personal or private
> than the passing of urine. Most people describe it by
> euphemisms if they talk about it at all. It is a function

---

3. The type of search at issue in this case is requiring an arrestee to urinate into a specimen container. Collecting urine via catheterization is highly physically invasive and would weigh heavily in favor of requiring a warrant.

> traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.

*Skinner*, 489 U.S. at 617, 109 S. Ct. at 1413 (quoting *Nat'l Treasury Emps. Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir. 1987)). "[T]he process of collecting the sample to be tested . . . may . . . involve visual or aural monitoring of the act of urination . . . ." *Id.* Thus, while "participation in a breath test is not an experience that is likely to cause any great enhancement in the embarrassment that is inherent in any arrest[,]" *Birchfield*, ___ U.S. at ___, 136 S. Ct. at 2177, the same cannot be said of the experience of urinating into a specimen container under the watchful eye of a law-enforcement officer.

[¶16.]        In light of the foregoing, law enforcement must secure a warrant prior to obtaining a urine sample from an arrestee. Even though there may not be a less-invasive method of obtaining the evidence in an arrestee's urine, the privacy concerns involved in searching an arrestee's urine are much greater than those involved in subjecting an arrestee to a breath test. Until and unless the United States Supreme Court offers further guidance on applying the search-incident-to-arrest exception to searching an arrestee's urine, this Court will adhere to the Fourth Amendment's "strong preference for searches conducted pursuant to a warrant[.]" *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983). Other courts have similarly held. *See State v. Thompson*, 886 N.W.2d 224, 233 (Minn. 2016) (holding warrant required to search urine of motorist arrested for driving under influence of alcohol); *State v. Helm,* 901 N.W.2d 57, 60-61 (N.D. 2017) (holding warrant required to search urine of motorist arrested for driving under influence of controlled substance).

[¶17.] Our decision today does not mean law enforcement is prohibited from ever searching an arrestee's urine. For example, law enforcement may seek a warrant requiring an arrestee to provide a urine sample by urinating into a specimen container. The normal requirements for the issuance of a search warrant would apply; specifically, "no Warrants shall issue, but upon *probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added).[4] And "[t]o the extent that law enforcement still has specific concerns about the potential loss of evidence in a particular case, there remain more targeted ways to address those concerns." *Riley*, ___ U.S. at ___, 134 S. Ct. at 2487. For example, while a natural process like metabolization does not constitute an exigency per se, it may constitute an exigency in a particular case. *See Missouri v. McNeely*, 569 U.S. 141, 165, 133 S. Ct. 1552, 1568, 185 L. Ed. 2d 696 (2013) ("[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency *in every case* sufficient to justify conducting a blood test without a warrant." (emphasis added)).[5]

---

4. In this case, obtaining a warrant to search Lar's urine for metabolites of a controlled substance—as opposed to metabolites of marijuana—would have required law enforcement to identify "evidence which would 'warrant a [person] of reasonable caution in the belief' that" Lar had ingested a controlled substance. *See Wong Sun v. United States*, 371 U.S. 471, 479, 83 S. Ct. 407, 413, 9 L. Ed. 2d 441 (1963) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925)) (defining the term *probable cause*).

5. On appeal, the State additionally argues Lar's conviction should nevertheless be affirmed under the good-faith exception to the exclusionary rule. But as Lar points out, the State did not raise this argument before the circuit court.

(continued . . .)

**Conclusion**

[¶18.]     Having considered an arrestee's legitimate expectation of privacy and the government's competing interest in preserving evidence, we conclude law enforcement may not require an arrestee to urinate into a specimen container as a search incident to a lawful arrest.  The Fourth Amendment requires law enforcement to obtain a warrant to conduct such a search.  Therefore, the search at issue in this case violated the Fourth Amendment, and the circuit court erred by denying Lar's motion to suppress evidence obtained by the chemical analysis of his urine.

[¶19.]     We reverse and remand.

[¶20.]     ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶21.]     KERN, Justice, concurs with a writing.

[¶22.]     JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

KERN, Justice (concurring).

[¶23.]     I write only to note the inevitable question looming on the horizon: what steps may be taken when a person refuses to submit to a search warrant authorizing collection of a urine sample?  May law enforcement forcibly restrain and

_____

(. . . continued)

> Arguments not raised at the trial level are deemed waived on appeal. *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 12 n.5, 764 N.W.2d 474, 480 n.5.  Arguments regarding the good-faith exception to the exclusionary rule are no different.  *State v. Jackson*, 2000 S.D. 113, ¶ 12 n.1, 616 N.W.2d 412, 417 n.1.

catheterize the suspect when the warrant does not specify the method of urine collection? Indeed, search warrants need not "include a specification of the precise manner in which they are to be executed." *Dalia v. United States*, 441 U.S. 238, 257, 99 S. Ct. 1682, 1693, 60 L. Ed. 2d 177 (1979). Rather, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant—subject of course to the general Fourth Amendment protection against 'unreasonable searches and seizures.'" *Id.*

[¶24.] Catheterization is an invasive medical procedure. It involves insertion of a tube through the suspect's urethra and into the bladder to obtain a urine sample. Such a highly intrusive act raises the question if and when it is a reasonable method of urine collection. Within the context of 42 U.S.C. § 1983 litigation, courts have been grappling with issues raised by the use of involuntary catheterization by law enforcement in South Dakota and elsewhere. *See, e.g.*, *Riis v. Does One Through Twenty*, No. 3:17-CV-03017-RAL, 2017 WL 5197405, at *5 (D. S.D. Nov. 9, 2017); *Clark v. Djukic*, No. 2:14 CV 160, 2017 WL 4278039, at *6 (N.D. Ind. Sept. 25, 2017); *Pillow v. City of Appleton*, No. 14-C-1298, 2017 WL 2389625, at *3 (E.D. Wis. June 1, 2017). Courts should bear in mind that they may disallow *search methods* when issuing a warrant, and a search authorized by a warrant must nonetheless be reasonable in execution. *Dalia*, 441 U.S. at 257, 99 S. Ct. at 1693. However, because this case presents neither facts specific to nor briefing on this constitutional issue, the question is not before us for review. *See Miller v. Idaho State Patrol*, 252 P.3d 1274, 1283 (Idaho 2011).